IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-721-GPM-DGW |
| | ) | |
| OFFICER GALE and OFFICER HULL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. §1997e(a). It is **RECOMMENDED** that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit, that the Motion for Summary Judgment filed by Defendants Gale and Hull (Doc. 34) be **GRANTED**, that Defendants Gale and Hull be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff William Smith filed a *pro se* complaint in the action on September 20, 2010, alleging that various officials at the Pinckneyville Correctional Center violated his constitutional rights (Doc. 1). In an amended complaint filed April 14, 2011, he alleged specifically that during a lockdown he was denied a

shower for approximately 30 days, causing him to develop a painful rash (Doc. 14). Plaintiff stated that Pinckneyville officials then denied his requests for medical attention for the rash. Plaintiff set forth claims of cruel and unusual conditions of confinement, deliberate indifference to a serious medical need, and retaliation for filing of past grievances.

Upon threshold review, the Court dismissed the conditions-of-confinement and deliberate indifference claims, but allowed Plaintiff to proceed against Defendants Gale and Hull on the retaliation claim (Doc. 15). All other defendants were dismissed from the action.

In answering the amended complaint, Defendants Gale (Doc. 23) and Hull (Doc. 30) raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies. Those defendants filed a motion for summary judgment on the same basis on November 21, 2011, which is now before the Court (Doc. 34). Defendants concede that on December 18, 2010, Plaintiff filed a grievance regarding the denial of showers during the lockdown (Doc. 35-1, pp. 6-7). Grievance Officer K. Deen recommended denial of the grievance on January 15, 2010. Chief Administrative Officer Randy Davis concurred in the denial on January 29, 2010 (Doc. 35-1, p. 5). Plaintiff appealed denial of the grievance; the ARB affirmed its denial (Doc. 35-1, p. 4). Defendants argue, however, that the grievance was insufficient to exhaust the retaliation claims against Defendants Gale and Hull because it does not name or otherwise identify either defendant, nor does it allege retaliation.

Plaintiff's grievance stated:

On 12-5-09 Pinckneyville CC went on an institution lock down, on 12-12-09 one week later the institution was still on lock down. I William Smith informed "C/O McDonald" who was working R2-A wing at the time, that I need a shower, because ever since the institution went on lock down I've been confined to the cell without receiving one. His reply was "for whatever reason the institution is on lock down you are not going to get a shower until the institution comes off lock down status," so I let him know by not allowing me a shower for 7 days has caused me to develop chronic jock itch, athlete's foot, chafing and peeling of the skin, which in fact is cruel and unusual punishment that clearly violated

my "Eighth amendment right" under the United States constitution. His response was "so what and if it was left up to him, inmates would never have access to the shower." Nor do he care if I "smelt rotten like a skunk"!!

Now on 12-13-09 the institution was still on lockdown for 8 days now. I repeatedly asked "C/O E. Minton" that since the lockdown of the institution, I have not been able to clean my cell, nor have I had a shower and my laundry hasn't been washed, which in total has left me with the possibility to catch the MRSA/Staph infection. He said "it's not his responsibility to look after no grown man." I told him that my Eighth amendment right is being violated by him turning a "blind eye" to the obvious constitution violation. His reply to me telling him that was "oh well get over it you'll live."

(Doc. 35-1, pp. 6-7.)

In response to the Motion for Summary Judgment, Plaintiff contends that after learning Plaintiff had filed a grievance about denial of showers during lockdown, Defendants Gale and Hull, in retaliation, refused to provide him with a shower, cleaning supplies, or grievance forms. As a result, he had no grievance forms and was thus precluded from filing grievances on the retaliation issue. He claims, therefore, that administrative remedies were not "available" to him (Doc. 38). In support of his position, Plaintiff submits the affidavits of Bryant Adams and Robert Clark (Doc. 38 pp. 12-13). Both Adams and Clark averred that Defendants Gale and Hull refused to provide them with grievance forms, and the counselor did not visit the tier upon which they were housed during the lockdown.

*Pavey Hearing*

The Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on February 2, 2012. Plaintiff appeared via videoconference. Upon questioning from the Court, the Plaintiff testified that Defendants Gale and Hull refused to give him any grievance forms, but told him to request grievance forms from the correctional counselor. Plaintiff testified that he did seek grievance forms from the correctional counselor by making a request on notebook paper, but he never received the forms (Doc. 47, Hrg. Trans. p. 7).

3

Pinckneyville Correctional Counselor Theresa Kisro testified that she was Plaintiff's correctional counselor from approximately December 21, 2009, to mid-January 2010. Relying on Plaintiff's cumulative counseling summary (a computerized log in which counselors record contacts with inmates), Counselor Kisro testified that another counselor, Hoffard, sent Plaintiff grievance forms on December 16, 2009, although the record did not indicate how many forms were sent. On December 21, 2009, Counselor Kisro received a grievance from Plaintiff regarding showers and laundry during the lockdown. She responded to the grievance and returned it to Plaintiff the next day, December 22, 2009. Counselor Kisro testified that she saw Plaintiff at his cell on December 28, 2009. He asked for a trust fund statement, which she gave him. The summary also indicated that another counselor responded to a grievance submitted by Plaintiff on January 21, 2010 (Hrg. Trans. pp. 14-18).

Defendants argued that while they did not provide Plaintiff with any grievance forms, Plaintiff had other ways to obtain them. The records show that Plaintiff saw his counselor during the lockdown, but did not ask for a grievance form. Moreover, the lockdown ended on January 13, 2010. Plaintiff could have obtained a grievance form then. In sum, Defendants argued that grievance forms were available to Plaintiff, yet he did not submit a grievance about retaliation by Officers Gale or Hull (Hrg. Trans. pp. 20-21).

In response, Plaintiff maintained that he was unable to obtain grievance forms. He was unable to remember whether he had contact with a counselor at the times stated in the summary, but he claimed that had a counselor come by his cell, he would have asked her for a grievance form (Hrg. Trans. pp. 21-22).

At the hearing, Plaintiff submitted affidavits of two other inmates, Johnny Patterson and Danny Gholson. Patterson averred that on January 25, 2010, he heard Plaintiff ask a counselor named Hess whether an inmate may submit a grievance in any form other than the official grievance form. Gholson

4

averred that he had asked correctional officers for grievance forms and was told that he should ask his counselor. He further averred that counselors sometimes failed to provide him with a grievance form and would not allow him to file a grievance in another format.

### CONCLUSIONS OF LAW

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).

An inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, he must file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20 § 504.810. The grievance officer is required to advise the Chief Administrative Officer (CAO) at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. ILL. ADMIN. CODE TIT. 20 § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE TIT. 20 § 504.850.

***Plaintiff's exhausted grievance does not properly name defendants or state claims against them.***

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the

5

offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." ILL. ADMIN. CODE TIT. 20, § 504.810(b). The Supreme Court has held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. The Court emphasized that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. Instead, the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Plaintiff's exhausted grievance does not include any allegations of retaliatory behavior by Defendants Gale and Hull. In fact, it did not mention Defendants Gale or Hull at all. The grievance complained only of the denial of showers by Correctional Officers McDonald and Minton. Due to Plaintiff's failure to name or describe Defendants Gale and Hull, or to complain of retaliatory acts in the exhausted grievance, the grievance was insufficient to exhaust as to Defendants Gale or Hull on the retaliation claim. Specifically, the grievance did not comply with the Illinois regulations which require an inmate to grieve facts regarding each complaint and name the individuals involved.

***Plaintiff was not precluded from filing grievances.***

An inmate is required to exhaust only those administrative remedies available to him. *See* 42

6

U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Plaintiff contends that his failure to file a grievance on the retaliatory behavior of Defendants Gale and Hull resulted from his inability to obtain a grievance form. The evidence submitted and testimony given at the *Pavey* hearing belie Plaintiff's assertion. Plaintiff himself stated at the hearing that he asked Defendants Gale and Hull for grievance forms and was told he should contact his counselor. Counselor Kisro's testimony indicated Counselor Hoffard sent Plaintiff a grievance form or forms on December 16, 2009. Counselor Kisro received a grievance from Plaintiff on December 21, 2009, and returned it to him with her response the next day, December 22, 2009. Plaintiff's cumulative counseling summary showed that he spoke with his counselor on December 28, 2009, and asked for a trust fund statement, but not a grievance form. Plaintiff testified that he could not remember the December 28 interaction, but felt certain had he seen his counselor, he would have asked for a grievance form. The counseling summary further indicated that Plaintiff filed a grievance, to which another counselor responded, on January 21, 2010. Plaintiff does not dispute Defendants' assertion that the Pinckneyville lockdown was lifted on January 13, 2010. If the lockdown was the cause of Plaintiff's inability to obtain a grievance form,

7

Plaintiff could have filed a grievance about Defendants' retaliatory behavior after that date. Under the regulations, an inmate has 60 days from the date of the incident in which to file a grievance. The events described in the complaint occurred in December 2009. Plaintiff would have had until sometime in February 2010 to file the grievance.

Plaintiff's filing of another grievance with his counselor on January 21, 2010, further belies his claim of unavailability. On the contrary, his successful filing on that date shows that Plaintiff had managed to obtain a grievance form in January 2010. It further demonstrates that he understood the process and was able to use it properly during that time. Accordingly, the undersigned finds not credible the Plaintiff's claims that administrative remedies were unavailable to him.

## CONCLUSION

Based on all the foregoing, it is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies prior to filing suit, that the Motion for Summary Judgment filed by Defendants Gale and Hull (Doc. 34) be **GRANTED**, the Defendants **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: April 12, 2012**

                                      **DONALD G. WILKERSON**
                                      **United States Magistrate Judge**