IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM SMITH, IDOC # K55219, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 10-721-GPM |
| | ) |
| GREG SCHWARTZ, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This is an action by Plaintiff William Smith, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") incarcerated in the Pinckneyville Correctional Center ("Pinckneyville"), brought pro se pursuant to 42 U.S.C. § 1983 against Defendants Bruce Gale and Ronald Hull, who are guards at Pinckneyville, for alleged violations of Smith's constitutional rights.[1] Specifically, Smith alleges that, during a lockdown at Pinckneyville from December 5, 2009, until January 13, 2010, Gale and Hull refused to give Smith grievance forms. Smith alleges that the refusal of Gale and Hull to give him grievance forms was in retaliation for an earlier grievance that Smith had filed on December 18, 2010, against two other guards at Pinckneyville, McDonald and E. Minson, for allegedly refusing to permit Smith to have a shower, cleaning supplies, or clean laundry while Pinckneyville was on lockdown status. Gale and Hull have moved for summary judgment on Smith's retaliation claim on the grounds that Smith failed to exhaust

---

1. In his complaint and amended complaint in this case, Smith incorrectly identifies Hull as "Haul." In this Order, the Court refers to Defendant Haul by his correct name, Hull, as set out in his filings with Court.

administrative remedies as to the claim before filing suit on the claim (Doc. 34). Currently this matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson recommending that the motion for summary judgment be granted (Doc. 50). Smith has filed a timely objection to Magistrate Judge Wilkerson's Report and Recommendation (Doc. 53). Having considered the matter carefully, the Court rules as follows.

In general, a federal district judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to the district judge proposed findings of fact and recommendations for the disposition of a motion for summary judgment. *See* 28 U.S.C. § 636(b)(1)(A)-B. "[T]he magistrate judge shall file his proposed findings and recommendations . . . with the court and a copy shall forthwith be mailed to all parties." 28 U.S.C. § 636(b)(1)(C). The statute provides further,

> Within fourteen days after being served with a copy [of a magistrate judge's findings and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b); SDIL-LR 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). In conducting de novo review of a magistrate judge's report and recommendation, a district judge "is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). However, the district judge must give "fresh consideration to those issues to which

specific objections have been made." *Wasserman v. Purdue Univ.*, 431 F. Supp. 2d 911, 914 (N.D. Ind. 2006). *See also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3070.2 (2d ed. 1987 & Supp. 2011) (the "de novo determination" required under 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure is "not meant to compel the [district] judge to conduct a new hearing" and instead means that the district judge must "give fresh consideration to those issues to which specific objections have been made") (collecting cases). "[I]f following a review of the record the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Goffman*, 59 F.3d at 671.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id*. Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With respect to affidavits and declarations, the rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Our role is not to weigh the evidence in search of a preponderance as would a jury, but it is instead the more restrictive function of determining if the evidence in support of the verdict is *substantial*; a mere scintilla of supporting evidence will not suffice." *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994) (emphasis in original). Finally, in evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010).

The Court turns then to the issue of exhaustion of administrative remedies. Under 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to give "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). *See also Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001) ("The exhaustion requirement provides the prison system with prompt notice of problems. This, of course,

is preferable to a system where the prison might get its first notice of a claim in a lawsuit filed several years later just before the running of a statute of limitations."). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Thus, under Section 1997e(a) exhaustion of administrative remedies by a prisoner suing for an alleged violation of his or her civil rights is "mandatory" and "is required for any suit challenging prison conditions[.]" *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). A "civil action with respect to prison conditions" is "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." *Witzke v. Femal*, 376 F.3d 744, 750-51 (7th Cir. 2004) (quoting 18 U.S.C. § 3626(g)(2)). Exhaustion of administrative remedies by a prisoner is a precondition to bringing suit for an alleged violation of the prisoner's constitutional rights under 42 U.S.C. § 1983, regardless of the apparent futility of pursuing an administrative remedy, whether money damages are sought as a remedy, and notions of judicial economy. *See Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535-37 (7th Cir. 1999). Also, exhaustion of administrative remedies means "proper exhaustion," that is, a prisoner must file a timely grievance utilizing the procedures put in place by the prison system. *Woodford*, 548 U.S. at 90. Said differently, a prisoner must "properly take each step within the administrative process[.]" *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Furthermore, failure to exhaust administrative remedies will bar a prisoner's lawsuit even if exhaustion is accomplished during the pendency of the prisoner's suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is "an affirmative defense that the defendants have the burden of pleading and proving." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). As the language of the statute makes clear, in order to establish that a prisoner plaintiff failed to exhaust administrative remedies, a defendant must first demonstrate that an administrative remedy was available to the prisoner. To satisfy this requirement, the defendant must show that the agency in question had authority to provide "some redress" for the wrong alleged by the prisoner. *Booth v. Churner*, 532 U.S. 731, 736 (2001). *See also McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2001) ("The exhaustion requirement applies whenever there is some administrative process remaining at the prisoner's disposal."). "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Booth*, 532 U.S. at 736 n.4. *See also Larkin v. Galloway*, 266 F.3d 718, 722 (7th Cir. 2001) ("[E]xhaustion would not be required if the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint[.]") (quotation omitted). Thus, if an administrative remedy is not available to a prisoner claiming a violation of his or her constitutional rights, the prisoner is not required to pursue an administrative remedy before filing suit. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting 42 U.S.C. § 1997e(a)) ("If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (a prisoner "must exhaust only those administrative remedies that are available to him").

The administrative remedies available to prisoners in IDOC custody are contained in IDOC regulations codified in Title 20 of the Illinois Administrative Code. *See* Ill. Admin. Code tit. 20, § 504.800 *et seq*. The regulations first require a prisoner to speak with a correctional counselor about a complaint concerning the conditions of the prisoner's confinement. *See* Ill. Admin. Code tit. 20, § 504.810(a). If the correctional counselor cannot resolve the issue, the prisoner must file a grievance form directed to the grievance officer at the prison where the prisoner is incarcerated within sixty days of discovery of the incident, occurrence, or problem giving rise to the grievance. *See id*. The grievance form must

> contain factual details regarding each aspect of the [prisoner's] complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude [a prisoner] from filing a grievance when the names of individuals are not known, but the [prisoner] must include as much descriptive information about the individual as possible.

Ill. Admin. Code tit. 20, § 504.810(b). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"]. The [CAO] shall advise the [prisoner] of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." Ill. Admin. Code tit. 20, § 504.830(d). If the prisoner is not satisfied with the CAO's response, he or she can then appeal to the Director of the IDOC through the Administrative Review Board ("ARB"). "If, after receiving the response of the [CAO], the [prisoner] still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the [CAO's] decision should be attached." Ill. Admin. Code tit. 20,

§ 504.850(a). Under the regulation, "[t]he [ARB] shall submit to the Director a written report of its findings and recommendations." Ill. Admin. Code tit. 20, § 504.850(e). "The Director shall review the findings and recommendations of the [ARB] and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The [prisoner] shall be sent a copy of the Director's decision." Ill. Admin. Code tit. 20, § 504.850(f).

Where the issue of exhaustion of administrative remedies is contested, the United States Court of Appeals for the Seventh Circuit has cautioned that a district court "must not proceed to render a substantive decision until it has first considered [42 U.S.C.] § 1997e(a). The statute gives prisons and their officials a valuable entitlement – the right *not* to face a decision on the merits – which the courts must respect if a defendant chooses to invoke it." *Perez*, 182 F.3d at 536 (emphasis in original). Correspondingly, where a prisoner's failure to exhaust administrative remedies has been raised as a defense, issues relating to exhaustion are to be resolved by a court before proceeding to the merits. *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). In *Pavey* the Seventh Circuit Court of Appeals explained the sequence to be followed if exhaustion is contested. First, a district judge should conduct a hearing on exhaustion and permit whatever discovery relating to exhaustion that the judge deems appropriate. *See id*. at 742. If the district judge determines that a prisoner did not exhaust administrative remedies, the judge must then determine whether the prisoner should be required to exhaust or whether, if the failure to exhaust was "innocent . . . as where prison officials prevent a prisoner from exhausting his remedies," the prisoner must "be given another chance to exhaust[.]" *Id*. In the latter scenario, an "innocent" failure to exhaust, the *Pavey* court added the proviso that leave to exhaust should be given only if

"there exist remedies that [the prisoner] will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround[.]" *Id*. If, however, the district judge finds that "the failure to exhaust was the prisoner's fault," then "the case is over." *Id*. "If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits[.]" *Id*. Further, "if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies." *Id*. Implicit in the holding of *Pavey* is the view that any discovery in a case prior to resolution of the issue of exhaustion should be related solely to the exhaustion issue. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *1 (E.D. Wis. Mar. 30, 2010) (citing *Pavey*, 544 F.3d at 742) (noting that, under *Pavey*, discovery in advance of a decision about exhaustion of administrative remedies must "relat[e] to exhaustion . . . and only to exhaustion"). Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

      Here it is undisputed that Gale and Hull properly asserted the affirmative defense of failure to exhaust administrative remedies in their answers to Smith's operative complaint in this case. *See* Doc. 14; Doc. 23 at 5 ¶ 5; Doc. 30 at 5 ¶ 5. On February 2, 2012, Magistrate Judge Wilkerson conducted a *Pavey* hearing on the issue of whether Smith had exhausted his administrative remedies as to his retaliation claim against Gale and Hull; Smith participated in the *Pavey* hearing via videoconferencing. At the *Pavey* hearing it was established that on

December 18, 2009, Smith filed a grievance against McDonald and Minson. Smith's grievance stated, in relevant part:

> On 12-5-09 Pinckneyville CC went on a institution lock down, on 12-12-09 one week later the institution was still on lock down. I William Smith informed "C/O McDonald" who was working R2-A wing at the time, that I need a shower, because ever since the institution went on lock down I've been confined to the cell without receiving one. His reply was "for whatever reason the institution is on lock down you are not going to get a shower until the institution comes off lock down status," so I let him know by not allowing me a shower for 7 days has caused me to develop chronic jock itch, athlete's foot, chaffing [sic] and peeling of the skin, which in fact is cruel and unusual punishment, that clearly violated my "Eighth amendment right" under the United States constitution. His response was "so what and if it was left up to him, inmates would never have access to the shower." Nor do he care if I "smelt rotten like a skunk"!!
> Now on 12-13-09 the institution was still on lock down, for 8 days now. I repeatedly asked "C/O E Minson" for a shower and sanitation supplies to no avail. Additionally, I informed "C/O E. Minson" that since the lock down of the institution, I have not been able to clean my cell, nor have I had a shower and my laundry hasn't been wash. Which in total has left me with the possibility to catch the MRSA/Staph infection. He said "it's not his responsibility to look after no grown man." I told him that my Eighth amendment right is being violated by him turning a "blind eye" to the obvious constitution violation. His reply to me telling him that was "oh well get over it you'll live."

Doc. 14 at 8-9. K. Deen, a grievance officer at Pinckneyville, recommended denial of Smith's December 18 grievance on January 15, 2010, and Randy Davis, the CAO of Pinckneyville, concurred on January 29, 2010. *See* Doc. 35-1 at 5. Smith appealed the denial of his December 18 grievance; on May 14, 2010, the Director of the IDOC, concurred in the ARB's recommendation that the denial be affirmed. *See id*. at 4. As Magistrate Judge Wilkerson found, Smith's December 18 grievance did not exhaust Smith's administrative remedies against Gale and Hull because the grievance did not claim retaliation against Smith by Gale and Hull.[2]

---

2.   It perhaps is worth pointing out that Smith claims in his operative complaint in this case that it was because of Smith's December 18 grievance against McDonald and Minson that Gale and Hull retaliated against Smith, by refusing to give Smith grievance forms.

At the *Pavey* hearing, Smith testified that, although Gale and Hull did not give him grievance forms, they told him to request such forms from Smith's correctional counselor:

> THE COURT: You asked Defendant Gale and Defendant Hull for –
> MR. SMITH: Grievance forms.
> THE COURT: Grievance forms. Thank you. Neither one of those would give you a grievance form?
> MR. SMITH: Correct.
> THE COURT: Now was there any other way for you to receive a grievance form?
> MR. SMITH: Well, I was told from Defendant Hull and Gale to request grievances from the counselor through request slip.

Doc. 47 (Transcript of *Pavey* Hearing) at 7. Theresa Kisro, a correctional counselor at Pinckneyville, testified at the *Pavey* hearing in this case that she was Smith's correctional counselor from approximately December 21, 2009, to mid-January 2010. *See* Doc. 47 at 14. Relying on Smith's cumulative counseling summary, a computerized log in which correctional counselors record contacts with prisoners, Kisro testified that another correctional counselor, Hoffard, sent Smith grievance forms on December 16, 2009, although the record did not indicate how many forms were sent. *See id*. at 16, 18-19. Kisro testified that on December 21, 2009, she received a grievance from Smith regarding an alleged denial of showers and clean laundry during the lockdown at Pinckneyville. *See id*. at 16. Kisro testified that she responded to the grievance and returned it to Smith the next day, December 22, 2009. *See id*. Kisro testified also that she saw Smith at his cell on December 28, 2009. *See id*. At that time, Smith asked for a trust fund statement, which Kisro gave him. *See id*. Kisro also testified that the cumulative counseling summary reflected that another correctional counselor at Pinckneyville responded to a grievance submitted by Smith on January 21, 2010. *See id*.[3]

---

3. The grievance Smith filed on January 21, 2010, does not appear to be part of the record of this case.

For his part, Smith takes the position that under IDOC regulations, Gale and Hull should have furnished him with grievance forms on request. Smith cites to IDOC regulations providing that a prisoner "may file a written grievance on a grievance form that shall be made available in all living units." Ill. Admin. Code tit. 20, § 504.810(a). Whether this regulation imposes a duty on guards at IDOC facilities to make grievance forms available to prisoners on demand is an interesting question that the Court need not resolve; certainly no such duty exists under the Constitution. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (the fact that a prison maintains an "inadequate" grievance procedure is not a constitutional violation). Most importantly for our purposes here, Smith makes no claim that he exhausted his administrative remedies with respect to his retaliation claim against Gale and Hull, and instead Smith claims that it was impossible for him to exhaust his administrative remedies. Smith testified at the *Pavey* hearing in this case that he requested grievance forms from his correctional counselor by making a request on notebook paper, but that he received no grievance forms in response. *See* Doc. 47 at 7-8. Smith also submitted in response to the motion for summary judgment in this case affidavits by two other prisoners at Pinckneyville, Bryant Adams and Robert Clark, both of whom attested that they were in the same housing unit as Smith during the lockdown at Pinckneyville from December 5, 2009, through January 13, 2010. Both Adams and Clark attested that they were denied grievance forms by Gale and Hull and that no correctional counselor visited their tier during the lockdown. *See* Doc. 38 at 12-13. The affidavits of Bryant and Clark are contradicted by the testimony of Kisro at the *Pavey* hearing:

> Q. As part of your job duties, do you also go cell to cell and contact inmates?
> A. Always.
> Q. How often do you do that?

> A. It is my – we're required to see them once, make face to face contact once every 60 days, however, when I have a case load I, especially on lockdown, I make rounds pretty much every single day during lockdown. I go door to door.

Doc. 47 at 14. Obviously, Magistrate Judge Wilkerson credited Kisro's testimony over the affidavits of Bryant and Clark, and the undersigned cannot say that it was clearly erroneous for Magistrate Judge Wilkerson to do so. Most importantly, Smith's evidence of denial of access to the grievance procedure at Pinckneyville during the lockdown is simply beside the point, as it is undisputed that the lockdown ended on January 13, 2010. With the end of the lockdown at Pinckneyville, Smith would have had ready access to his correctional counselor and thus to grievance forms; the fact that Smith filed a grievance on an unknown subject on January 21, 2010, belies any claim by Smith that he could not have exhausted administrative remedies with respect to his retaliation claim against Gale and Hull. As already has been discussed, under IDOC regulations, if a correctional counselor cannot resolve a prisoner's complaint about conditions of confinement at the IDOC facility where the prisoner is incarcerated, the prisoner has sixty days from the date of the incident giving rise to the prisoner's complaint to file a grievance form with the grievance officer at the prison where the prisoner is incarcerated. *See* Ill. Admin. Code tit. 20, § 504.810(a). Here, assuming that the alleged retaliation against Smith by Gale and Hull commenced some time after December 18, 2009, when Smith filed his grievance against McDonald and Minson, Smith had until at least February 18, 2010, over a month after the lockdown at Pinckneyville ended, to file a grievance against Gale and Hull for retaliation. In sum, having conducted a de novo review of Magistrate Judge Wilkerson's Report and Recommendation in this case, the undersigned concludes that Magistrate Judge Wilkerson is correct in finding that Smith failed to exhaust administrative remedies with respect to his retaliation claim against Gale and Hull.

To conclude, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 50). The objection to the Report and Recommendation filed by Smith (Doc. 53) is **OVERRULED**. The motion for summary judgment brought by Gale and Hull (Doc. 34) is **GRANTED**, and Smith's retaliation claim against Gale and Hull is **DISMISSED without prejudice**. *See Ford*, 362 F.3d at 401 ("We . . . hold that *all* dismissals under [42 U.S.C.] § 1997e(a) should be without prejudice.") (emphasis in original). The Clerk of Court will enter judgment in accordance with this Order.

    **IT IS SO ORDERED.**

    DATED: April 30, 2012

    /s/ G. Patrick Murphy
    G. PATRICK MURPHY
    United States District Judge